UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ZHONG FA QIN, on behalf of himself and others :
similarly situated,
                       Plaintiff,

         -against-

SENSATION NEO SHANGHAI CUISINE,
INC., WEI CHUN GAO, ZHONGZIA SHEN,
"JOHN" ZHANG,

                Defendants.
-------------------------------------------------------------- x

**REPORT AND
RECOMMENDATION**

15-CV-6399 (KAM)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Zhong Fa Qin brought this Motion for Default Judgment ("Motion") against

Defendants Sensation Neo Shanghai Cuisine ("Corporate Defendant"), Wei Chun Gao ("Gao"),

Zhongxia Shen ("Shen"), and "John" Zhang ("Zhang"), seeking damages under the Fair Labor

Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"),

N.Y. Lab. Law §§ 650 *et seq.* (*See* Am. Compl., Dkt. 17.)

The Honorable Kiyo A. Matsumoto has referred the Motion to the undersigned for a Report

and Recommendation. (*See* April 23, 2018 Order.) For the reasons stated herein, the undersigned

respectfully recommends that the Motion be granted.

## BACKGROUND

The following facts are taken from the Amended Complaint unless otherwise indicated.

Corporate Defendant was a New York corporation with its principal place of business at 208 Grand

Street, Brooklyn, NY 11211 from August 26, 2011 to December 11, 2014. (Am. Compl. ¶ 9.) Gao,

Shen, and Zhang ("Individual Defendants" and collectively with Corporate Defendant,

"Defendants") were owners, operators, or managers of Corporate Defendant. (*Id.* ¶¶ 14-21.) Gao

was Plaintiff's immediate supervisor, and was responsible for "all areas of the restaurant, including

but not limited to the hiring and termination of kitchen workers and deliverymen, determining rates

of pay, work schedule (including work hours and work days), type of work assigned, designated work load and employment policy." (June 12, 2018 Transcript ("Tr.") at 32:02-32:03; Am. Compl. ¶ 14.) Shen was "in charge of all areas of the restaurant, including but not limited to the hiring and termination of waiters." (*Id.* ¶16.) Shen also worked as a waiter and "was involved in the daily management of the front hall." (*Id.* ¶ 17.) Zhang assisted Gao and Shen in the management of the restaurant and worked as a waiter. (*Id.* ¶¶ 19-20.)

Plaintiff worked for Defendants as a non-tipped miscellaneous worker handling all aspects of restaurant work from September 1, 2012 to November 30, 2012, and then as a food prep from December 1, 2012 to September 24, 2013. (*Id.* ¶ 8.) He was paid a monthly compensation of $1,500 as a miscellaneous worker and $2,000 as a food prep. (*Id.* ¶¶ 41-42.) During the entire period of employment with Defendants, Plaintiff worked around 76.5 hours each week. (*Id.* ¶¶ 39-40.) Plaintiff was not provided with a written notice, in English and Chinese (Plaintiff's primary language), at the time of hiring regarding his pay rates and schedule, and wage statements upon each payment of wages. (*Id.* ¶¶ 34, 86, 91.)

## PROCEDURAL BACKGROUND

On November 8, 2015, Plaintiff filed this action as a proposed Collective Action and Class Action against Defendants. (*See* Compl., Dkt. 1.) On December 14, 2016, Plaintiff filed an Amended Complaint, adding Jinlei Shen and Zhigang Tian as defendants. (*See* Am. Compl.) A copy of the Amended Complaint and Summons was served on all Defendants between January 6, 2017 and February 7, 2017. (*See* Dkt. 20.)

Defendants failed to appear or otherwise respond to the Amended Complaint. Plaintiff filed requests for a Certificate of Default (*see* Dkts. 21, 23-24), and the Clerk of Court entered a Default against all Defendants (*see* August 31, 2017 Entry of Default). On December 8, 2017, Plaintiff moved for default judgment on behalf of himself, seeking unpaid minimum and overtime wages,

spread-of-hours compensation, liquidated damages, and statutory damages for wage notice and statement violations.  Plaintiff also seeks prejudgment interest, and attorneys' fees and costs.  (*See* Pl.'s Mem. at 4-9, Dkt. 36; Dkts. 33-35.)

An Inquest was held on June 12, 2018, at which Plaintiff testified under oath.  (*See* Jun. 13, 2018 Min. Order.)  On June 26, 2018, Plaintiff filed a Notice of Voluntary Dismissal as to Jinlei Shen and Zhigang Tian.  (*See* Notice of Voluntary Dismissal, Dkt. 39.)  Plaintiff continued to supplement deficient motion papers until July 13, 2018.  (Dkts. 40, 41, 48.)

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, the Clerk of the Court must enter the party's default when the party has failed to answer or otherwise defend and "that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Then, the moving party must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b)(2).

A default "constitutes admission of all well-pleaded factual allegations in the complaint." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017).  However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis Pawn Shop, LLC*, 645 F.3d at 125-26, 133; (2) Plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) Plaintiff's allegations, when accepted as true, establish liability as a matter of law.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are

clearly established and the amount of damages. *See GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208 (internal citations omitted); *see also Mickalis Pawn Shop*, 656 F.3d at 129.

## II. Jurisdictional and Procedural Requirements

This Court has original subject matter jurisdiction over this action because it arises under the FLSA, a federal statute. *See* 28 U.S.C. § 1331. It also has supplemental jurisdiction over the related NYLL claims. *See* 28 U.S.C. § 1367.

The Court's exercise of personal jurisdiction over all Defendants is proper. The Court has general jurisdiction over Corporate Defendant, because it is a New York corporation with a principal place of business in Brooklyn. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Personal jurisdiction over a New York corporation is established once it is validly served in this district. *See* Fed. R. Civ. P. 4(k)(1)(A). A corporation may be served by delivering the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); *see also* N.Y. C.P.L.R. § 311(a)(1). Service upon Corporate Defendant was made by serving a copy of the Amended Complaint and Summons on Gao, described as Chief Executive Officer, at Defendants' place of business and also mailing them to that address. (*See* Dkt. 20.)

The domiciliaries of Individual Defendants are unknown, and the Court is unable to verify whether they are subject to the Court's general jurisdiction. However, because Individual Defendants have transacted business within the state as owners, operators, or managers of the Corporate Defendant, and because Plaintiff's claims arise from their business transactions, they may be subject to the Court's specific jurisdiction under New York's long-arm statute. N.Y. C.P.L.R. § 302(a); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). Each Individual Defendant was also properly served. Individuals can be personally served by delivering a copy of the summons and complaint to them, or leaving the same documents with a person of

suitable age and discretion at the defendant's "actual place of business, dwelling place or usual place

of abode," and by mailing them to the last known residence or actual place of business.  N.Y.

C.P.L.R. § 308(2); *see also* Fed. R. Civ. P. 4(e).  Gao was personally served at his place of business (*see*

Dkt. 20-3), Shen was served by leaving a copy of the Amended Complaint and Summons with his

father who is a person of suitable age and discretion and also mailing them to his last known home

address (*see* Dkt. 20-5), and Zhang was served by leaving the documents with Gao at Zhang's place

of business and mailing them to the same address (*see* Dkt. 20-2).

Additionally, Plaintiff has demonstrated that he has taken the required steps under the Local

Rules by requesting and obtaining a Certificate of Default (Dkts. 22-24; Entry of Default), making

an application to the Court for a default judgment (Dkts. 33-36), and then filing proof that the

motion papers were mailed to Defendants (Dkt. 48).  *See* Local Civ. R. 55.2.

## III.    Liability

### a.    Employment Relationship Under the FLSA

In order to plead a cause of action under the FLSA, Plaintiff must establish that: (1)

defendant is an employer subject to the FLSA; (2) plaintiff is an employee within the meaning of the

FLSA; and (3) the employment relationship is not exempted from the FLSA.  *See Saucedo v. On the*

*Spot Audio Corp.*, No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21,

2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

The FLSA broadly describes an employer as "any person [or corporation] acting directly or

indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does

not define the term "'employer' in the first instance."  *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d

Cir. 2013).  A defendant is an FLSA employer if it meets the criteria for either enterprise or

individual coverage.  *See Saucedo*, 2016 WL 8376837, at *4.  The enterprise coverage test considers

whether the employer

> has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.,* 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).  The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Saucedo,* 2016 WL 8376837, at *4.  "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Plaintiff alleges that, during the relevant period, Corporate Defendant "was a business engaged in interstate commerce that ha[d] gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year," and "purchased and handled goods moved in interstate commerce." (Am. Compl. ¶¶ 10-11.)

Ordinarily, allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce.   In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences.  *See, e.g., Rodriguez v. Almighty Cleaning, Inc.,* 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York."); *Fermin,* 93 F. Supp. 3d at 33 (it was "reasonable to infer that [a Peruvian restaurant] requires a wide variety of materials to operate" and "some of these materials moved or were produced in interstate commerce."); *but see Jones v. E. Brooklyn Sec. Servs. Corp.,* No. 11-CV-1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (recommending the denial of a default judgment where Plaintiff security guard stated "only conclusory statements about interstate commerce"), *R&R adopted,* 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012).  Here, considering the nature of Defendants' business, it is reasonable to infer that Defendants engaged in interstate commerce by handling and otherwise

working on goods that has been moved from or produced in other states.  The undersigned finds Plaintiff's allegations sufficient to establish Defendants' employer status for the purposes of Plaintiff's Motion.  *See Fermin*, 93 F. Supp. 3d at 33.  Moreover, Defendants may be held jointly and severally liable for FLSA violations since Individual Defendants are owners, operators, or managers of Corporate Defendant.  *Id.* at 37; *see also Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The statute protects "employee[s] who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).  Plaintiff alleges that he was employed by Defendants as a miscellaneous worker and food prep.  (Am. Compl. ¶¶ 8, 38, 42.)  Accepting these allegations as true, the undersigned finds that Plaintiff falls within the FLSA's definition of "employee."

In addition, the undersigned finds that there was an employer-employee relationship between Plaintiff and Individual Defendants under the Second Circuit's "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers."  *Irizarry*, 722 F.3d at 104.  The economic reality test considers whether the alleged employer:  "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted).  The Court must consider the "totality of the circumstances" and no one factor is dispositive.  *Irizarry*, 722 F.3d at 110.  The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself."  *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666

F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotation marks omitted).  Moreover, individuals who exercise "operational control over employees" can be held liable, "if [their] role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110.

Plaintiff alleges that Gao and Shen were "in charge of all areas of the restaurant," and had the power to "determine[] the rates of pay, work schedule . . . , type of work assigned, designated work load and employment policy."  (Am. Compl. ¶¶ 14, 16; Qin Aff. ¶¶ 14-15, Dkt. 34.)  Plaintiff alleges that Zhang "assisted" Gao and Shen "in the management of the restaurant," and had the "authority to determine the rates of pay, work schedule . . . , type of work assigned, designated work load and employment policy."  (*Id.* ¶ 19.)  Although Plaintiff specifically alleges that Gao had the power to "hire[ ] and terminat[e] . . . kitchen workers and deliverymen," and Shen had the same power over waiters, each Individual Defendant had operational or management control over "all areas of the restaurant" and hadfc the ability to "directly affect the nature or conditions of" Plaintiff's employment.  (*Id.* ¶¶ 14, 16, 19; *see also* Pl.'s Mem. at 2); *Irizarry*, 722 F.3d at 110.  Accepting Plaintiff's allegations as true, the undersigned finds that Individual Defendants were Plaintiff's employers.

Finally, Plaintiff must show that he is not exempt from the FLSA's protections, an analysis that requires more than a recitation of the statutory elements in the Complaint.  *Fermin*, 93 F. Supp. 3d at 32 (citations omitted).  The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), but they do not include functions such as miscellaneous restaurant worker or food prep.  *See also* 29 U.S.C. § 213.  Accordingly, the undersigned is satisfied that Plaintiff is a non-exempt employee under the FLSA.

Plaintiff has shown that the FLSA applies here.

b.  Employment Relationship Under the NYLL

In order to plead a cause of action under the NYLL, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which governs "any person employed for hire by an employer in any employment." N.Y. Lab. L. § 190. Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *Saucedo,* 2016 WL 8376837, at \*6. Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney*, 2016 WL 6585810, at \*9 (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Since the parties had an employer-employee relationship under the FLSA, they likewise had an employer-employee relationship under the NYLL.

Plaintiff has shown that the NYLL applies.

   c.  <u>Statute of Limitations</u>

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at \*6 (E.D.N.Y. Mar. 31, 2015). The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at \*6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiff filed his Complaint on November 8, 2015. (Dkt. 1.) Therefore, he may recover for FLSA violations that occurred on or after November 8, 2012.

Under the NYLL, the statute of limitations is six years.  *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiff may recover for NYLL violations that occurred on or after November 8, 2009.

**IV.    Plaintiff's Claims and Damages**

Plaintiff seeks compensation for unpaid minimum and overtime wage, spread-of-hour premium, statutory damages for wage notice and statement violations, liquidated damages, prejudgment interest, and attorneys' fees and costs.  Defendants are jointly and severally liable under the FLSA and NYLL for any damages award made in favor of Plaintiff.

a.    <u>Minimum and Overtime Wages</u>

An employer who fails to meet its minimum wage obligation is liable to affected employees under both the FLSA and NYLL.  *See* 29 U.S.C. §§ 206(a), 216(b); N.Y. Lab. Law § 652; *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.1.  The burden is on the plaintiff to show that he "was not properly compensated for the work performed," but "it is the employer's responsibility to maintain accurate records of an employee's hours." *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)); *see* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6.  When such records do not exist, a plaintiff can meet his burden "through [his] own recollection." *Padilla*, 643 F. Supp. 2d at 307 (citation omitted).

Moreover, under both statutes, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL).  In order to support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide

"sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim). Defendants are liable to Plaintiff for minimum and overtime wage rates that are calculated based on the employee's regular rate of pay or the applicable minimum wage rate, whichever is greater. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.102; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ) (RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016).

Plaintiff argues that, for the purpose of calculating the wages owed to Plaintiff, his weekly salary should be divided by 40 hours. (Pl.'s Mem. at 4.) However, "[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is *intended to compensate*." 29 C.F.R. §778.113(a) (emphasis added). The presumption that an employer's payment of weekly salary represent compensation for the first 40 hours of the employee's work week should not apply in cases, as here, where the employee had a fixed or consistent work schedule. *See, e.g., Chopen v. Olive Vine, Inc.*, No. 12-CV-2269 (NGG) (MDG), 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015), *R&R adopted as modified*, 2015 WL 1542082 (E.D.N.Y. Mar. 31, 2015); *Cazarez v. Atlantic Farm & Food Inc.*, 15-CV-2666 (CBA) (RML), 2017 WL 3701687, n. 3 (E.D.N.Y. May 31, 2017). Plaintiff alleges that his "regular work schedule" consisted of three week-day shifts of 36 hours and three weekend shifts of 40.5 hours, totaling 76.5 hours a week. (Am. Compl. ¶¶ 39-40; Qin Aff. ¶ 5.) Accepting these allegations as true, the undersigned finds that the parties' intention was not to compensate Plaintiff for only the first 40 hours of Plaintiff's work week. Accordingly, the undersigned calculates Plaintiff's hourly rate by dividing Plaintiff's weekly salary by the total hours worked.

Plaintiff alleges that he was compensated $1,500 per month from September 1, 2012 to November 1, 2012. (Am. Compl. ¶ 41; Qin Aff. ¶¶ 4, 7.) This amounts to an annual rate of $18,000 or a weekly rate of $346.15. Dividing this weekly rate by 76.5 hours results in an hourly rate of $4.52 during this period. Plaintiff alleges that he was paid $2,000 from November 2, 2012 to September 24, 2013. (Am. Compl. ¶ 42; Qin Aff. ¶¶ 4, 8.) Dividing his weekly rate of $461.54 by 76.5 hours results in an hourly rate of $6.03 during this period. During the entire period of Plaintiff's employment, the federal minimum wage was $7.25 per hour, and the NYLL minimum wage was $7.15 per hour. *See* 29 U.S.C. § 206 (a)(1)(C); N.Y. Lab. Law § 652. Accordingly, the undersigned finds minimum and overtime wage violations under both statutes.

To account for the different amounts paid, and different statute of limitations period and applicable minimum wage rate, the undersigned considers Plaintiff's damage claims in three separate time periods: (1) September 1, 2012 to November 1, 2012, a period covered by the NYLL but not the FLSA, and Plaintiff was paid $1,500 monthly; (2) November 2, 2012 to November 7, 2012, a period covered only by the NYLL and Plaintiff was paid $2,000 monthly; and (3) November 8, 2012 to September 24, 2013, a period covered by both the FLSA and NYLL, and Plaintiff was paid $2,000 monthly .

i.   September 1, 2012 to November 1, 2012

The applicable minimum wage rate during this period is $7.15 per hour under the NYLL. Using this rate and $10.73 as minimum and overtime rates, respectively, Plaintiff was entitled to $677.65 per week for 9 weeks or $6,098.85. Subtracting the actual wages Plaintiff earned during this period ($3,115.35) from this figure equals $2,983.50. The undersigned finds that Plaintiff is owed **$2,983.50** in unpaid minimum and overtime wages from September 1, 2012 to November 1, 2012.

ii.   November 2, 2012 to November 7, 2012

The applicable minimum wage rate during this period is also $7.15 per hour under the NYLL.  Using this rate and $10.73 as minimum and overtime rates, respectively, Plaintiff was entitled to $677.65 during this one week.  Subtracting the actual wages Plaintiff earned during this week ($461.54) from this figure equals $216.11.  The undersigned finds that Plaintiff is owed **$216.11** in unpaid minimum and overtime wages from November 2, 2012 to November 7, 2012.

           iii.   November 8, 2012 to September 24, 2013

The applicable minimum wage rate during this period is $7.25 under the FLSA.  Using this rate and $10.88 as minimum and overtime rates, respectively, Plaintiff was entitled to $687.12 per week for 46 weeks, or $31,607.52.  Subtracting the actual wages Plaintiff earned during this period ($21,230.84) from this figure equals $10,376.68.  The undersigned finds that Plaintiff is owed **$10,376.68** in unpaid minimum and overtime wages from November 8, 2012 to September 24, 2013.

Accordingly, the undersigned recommends that Plaintiff be awarded **$13,576.29 in unpaid minimum and overtime wages.**

      b.   <u>Spread-of-Hour Premium</u>

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  Defendants failed to pay Plaintiff spread-of-hours premium from September 2, 2012 to September 24, 2013, although he worked 12 or 13.5 hours each day, 6 days a week.  (Am. Comp. ¶ 39.)  Therefore, Defendants are liable to Plaintiff for violating the spread-of-hours requirement.

An award for spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total amount of days that the employee worked more than ten hours.  *See Santillan v. Henao,* 822 F. Supp. 2d 284, 296 (E.D.N.Y. 2011).  Employees are to be compensated at the applicable minimum wage regardless of their regular rate of pay.  N.Y. Comp. Codes R. & Regs.

tit. 12 § 142-2.4.  From September 1, 2012 to November 7, 2012, a period of 10 weeks, Plaintiff was entitled to spread-of-hours pay for 6 days per week at the applicable wage of $7.15 per hour, which equals $429.  From November 8, 2012 to September 24, 2013, a period of 46 weeks, Plaintiff was entitled to spread-of-hours pay for 6 days per week at the applicable wage of $7.25 per hour, which equals $2,001.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$2,430 for unpaid spread-of-hours premium**.

c.  Wage Statement and Notice Violations

Plaintiffs allege violations of Sections 195(1) and 195(3) of the NYLL, the statute's wage notice and statement provisions.  Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.  Violations of Section 195(1) carry damages of $50 per work day, for a maximum of $5,000.  N.Y. Lab. L. § 198(1-b).  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  Violations of Section 195(3) carry damages of $250 per work day, also for a maximum of $5,000.  *Id.* § 198(1-d).

Defendants failed to provide Plaintiff with the required written notice, in English and Chinese (Plaintiff's primary language), at the time of hiring, and wage statements upon each payment of wages throughout the course of Plaintiff's employment with Defendants.  Plaintiff worked for Defendants more than 100 days, and is thus entitled to recover the maximum statutory damages of $5,000 under Section 195(1) and $5,000 under Section 195(3).

Accordingly, the undersigned recommends that Plaintiff be awarded the **$10,000 in statutory damages** for wage statement and notice violations**.**

d.   Liquidated Damages

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663.  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages.  29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a).  Since Defendants failed to respond to the Motion, no good faith exists and liquidated damages are appropriate.  *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA.  *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*).  In light of the principle that "the law providing the greatest recovery will govern," Plaintiff may be awarded liquidated damages under the NYLL.  *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted).

Plaintiff's claims arise after the amendment of the NYLL, and he can recover "one hundred percent of the total amount of wages found to be due."  N.Y. Lab. Law § 198(1-a).  Thus, Plaintiff is entitled to liquidated damages equal to 100% of wages due or $16,006.28.

The undersigned recommends an award of **$16,006.29 in liquidated damages.**

e.   Pre-Judgment Interest

Plaintiff seeks "prejudgment interest on the New York law claims for unpaid overtime wages, and spread-of-hours pay."  (Pl.'s Mem. at 7; Am. Compl. at 19.)  Since "liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under NYLL."  *Saucedo*, 2016 WL 8376837, at 16 (citation omitted).

The statutory rate is nine percent per annum.  N.Y. C.P.L.R. § 5004.  Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as the midway point between when the plaintiff began and ended work.  *See Santillan*, 822 F. Supp. 2d at 298.

Plaintiff is entitled to recover prejudgment interest on $16,006.28 in actual damages awarded on his unpaid minimum, overtime, and spread-of-hours claims.  The midpoint between September 1, 2012 and September 24, 2013 is March 15, 2013.  Prejudgment interest on $16,006.29 at a rate of 9% per annum is $3.95 per day, for a total of $7836.80 from March 15, 2013 to the date of this Report and Recommendation.

Accordingly, undersigned recommends that Plaintiff be awarded **prejudgment interest of $7836.80, plus $3.95 per day to the date of judgment.**

f.  Attorneys' Fees & Costs

i.  *Hourly Rates*

Plaintiff's counsel seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 663(1).  District courts have broad discretion to determine the amount awarded, and the party requesting fees must provide documentation to support its claims.  *Mahoney*, 2016 WL 6585810, at *18.  Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  *Saucedo*, 2016 WL 8376837, at *16.  This "lodestar method" may be adjusted based on the circumstances of the case.  *Id.*

A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Saucedo*, 2016 WL 8376837, at *16-17.  The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of*

*Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Id.* (internal quotation marks and citation omitted).

Plaintiff submitted a contemporaneous attorney timesheet and an attorney declaration discussing counsel's qualifications. (Invoice, Dkt. 40-1; Troy Decl., Dkt. 40-2.) Plaintiff requests an hourly rate of $450 for attorney John Troy, $250 for attorney George Kibum Byun, $250 for attorney Joseph Myers, $150 for attorney Aaron Schweizer, $150 for legal fellow Tracy Ann Ulett, and $150 for intern Thomas Lindeman.

Troy is the "principal" at Troy Law, PLLC ("Troy Law"), and has been practicing law since 1989 and handling wage-and-hour cases in this district for the last nine years. (Troy Decl. ¶¶ 7-9, 12.) Given Troy's experience, the undersigned finds an hourly rate of $375 reasonable. *See, e.g., Fabre v. Highbury Concrete Inc.*, No. 17-CV-984 (CBA) (PK), 2018 WL 2389719, at *4 (E.D.N.Y. May 24, 2018) (approving an hourly rate of $375 for a founding partner of a law firm who has been prating law since 1990 and handling wage-and-hour cases since 2008).

Joseph Myers is a junior associate at Troy Law. (Troy Decl. at 12.) He graduated from law school in 2014 and was admitted to the bar in 2016. (*Id.* ¶¶ 31, 33.) Given his experience, the undersigned finds that an hourly rate of $150 reasonable.

Byun was the "Managing Associate" at Troy Law. (Troy Decl. ¶ 25.) He graduated from law school in 2015 and was admitted to the Bar in 2016. (*Id.* ¶ 27.) Byun worked at Troy Law until February 2018. (*Id.* ¶ 28.) Given his limited experience and involvement in the case, the undersigned finds that an hourly rate of $150 is reasonable.

Aaron Schweitzer is a junior associate at Troy Law.  (*Id.* ¶ 18.)  He graduated from law

school in 2016 and was admitted to the bar in 2018.  (*Id.* ¶ 19.)  Given his limited experience and

involvement in the case, the undersigned finds an hourly rate of $100 reasonable.

Tracy Ann Ulett is a Legal Fellow at Troy Law.  (*Id.* at 13.)  She graduated from law school

in 2016, and was admitted to practice in New Jersey in December 2016 and District of Columbia in

January 2018.  (*Id.* ¶¶ 37, 40.)  She is not admitted to practice in New York.  "Law clerks are

generally awarded rates similar to those of paralegals."  *Tr. of the 1199 SEIU Health Care Emp. Pension*

*Fund v. Traymore Chemists, Inc.*, No. 13-CV-070 (MKB), 2014 WL 4207589, at *12 (E.D.N.Y. June 25,

2014), *R&R adopted*, 2014 WL 4207592 (E.D.N.Y. Aug. 5, 2014) (citation omitted).  While courts in

this District have on occasion awarded an hourly paralegal rate above the typical range, it was for the

performance of "substantial legal work including, but not limited to, drafting, discovery

requests/responses, correspondence, helping prepare pre-trial orders, preparation of trial exhibits, as

well as other paraprofessional responsibilities."  *Monette v. Cty. of Nassau*, No. 11-CV-539 (JFB)

(AKT), 2016 WL 4145798, at *6 (E.D.N.Y. Aug. 4, 2016).  Moreover, the courts have set lower

hourly rates for law clerks and paralegals not yet admitted to the bar.  For example, in *Traymore*

*Chemists, Inc.*, the court reduced the hourly rate for a law clerk not admitted to the bar from $185 to

$75.  *See* 2014 WL 4207589, at *12.  In another case, the court reduced a student law clerk's rate

from $175 to $80.  *See Moore v. Houlihan's Rest., Inc.*, No. 07-CV-3129, 2011 WL 2470023, at *7-8

(E.D.N.Y. May 10, 2011), *R&R adopted*, 2011 WL 2462194 (E.D.N.Y. June 17, 2011).  Given the

range of hourly rates awarded to law clerks in this District and her limited experience, the

undersigned finds an hourly rate of $80 reasonable.

Thomas Lindeman is an intern at Troy Law.  (Troy Decl. at 14.)  He graduated from law

school in May 2018.  (*Id.* ¶ 43.)  "Law student interns and paralegals are generally compensated at

the same rate."  *Ng v. King Henry Realty, Inc.*, 2016 WL 6084074, at *5 (S.D.N.Y. 2016) (citing *M.C. ex*

*rel. E.C. v. Dep't of Educ. of the City of New York*, 2013 WL 2403485, at \*7-\*8 (S.D.N.Y. 2014)).
Lindeman's involvement in this case was mostly administrative.  Given his limited experience and
involvement in this case, the undersigned finds an hourly rate of $75 reasonable.

Plaintiff also requests an hourly rate of $150 for legal assistant Bella Yingchu Ho and office
assistant Bingyu Huang.  Ho is a legal assistant at Troy Law (Troy Decl. ¶ 47.)  Prior to joining Troy
Law in March 2017, she was an administrative assistant in Taiwan since 2012.  Huang is an office
assistant at Troy Law.  (*Id.* ¶ 51.)  He received his bachelor's degree in December 2017.  Yingchu
and Hung's in the case was mostly administrative.  The undersigned finds an hourly rate of $75 for
Ho and $70 for Huang reasonable.

*ii.  Hours Billed*

In determining a reasonable number of hours, district courts should "exclude excessive,
redundant or otherwise unnecessary hours."  *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.
1999).  Counsel billed a total of 79.65 hours.  (*See* Invoice at 1-4.)  The timesheet shows that the
partner spent several hours on administrative tasks such as "Set Up the Text Message, WeChat &
Lin Qin, Zhongfa," (1.4 hours) "Create Binder, Set Up/Key in Database" (1.3 hours) or "File the
Complaint, Summons & Civil Cover Sheet USDC" (3.5 hours).  (*Id.* at 1.)  These hours should be
billed at a paralegal rate.  Additionally, the hours spent on drafting responses to the Court's Order to
Show Cause and correspondence to the Court regarding serving a wrong defendant,[1] and filing
supplemental motion papers should be reduced.  The undersigned also excludes the time spent on
property research, and by "Siir Hobstetter3," because counsel failed to include qualifications for this
person.

---

[1] An individual with the name Wei Chun Gao, no relation to Defendant Gao, was improperly served
with the Amended Complaint, and appeared at the Inquest on June 12, 2018.  (*See* June 13, 2018
Min. Order.)

Eliminating such time resulted in 23.63 hours of compensable time for Troy; 0.5 hours for Myers; 5.31 hours for Byun; 2.75 hours for Schweitzer; 3.47 hours for Ulett; 1.4 hours for Lindeman; 1.17 hours for Ho; 0.63 hours for Huang; and additional 14.27 hours at a paralegal rate of $70 an hour.

Accordingly, the undersigned recommends a total of $11,521.10 in attorney's fees.

> ### iii.  Costs

Plaintiff seeks $1,039.93 in costs.  (Invoice at 4.)  Plaintiff is also entitled to recover reasonable costs under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).  The record shows that the costs include filing fees, service of process fees, interpreter fees, and administrative and research costs.  The undersigned finds these costs reasonable.

Accordingly, the undersigned recommends an award of **$11,521.10 in attorneys' fees and $1,039.93 in costs**.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment be granted, and that Plaintiff be awarded damages in the total sum of **$42,012.58** comprised of:

> (i)     **$16,006.29** in unpaid minimum, overtime, and spread-of-hour wages;
>
> (ii)    **$16,006.29** in liquidated damages; and
>
> (iii)   **$10,000** in statutory damages.

The undersigned also recommends that Plaintiff be awarded **$12,561.03** in attorneys' fees and costs, and prejudgment interest of **$7836.80**, plus **$3.95** per day to the date of judgment.

Plaintiff is directed to serve this Report and Recommendation on Defendants and file proof of service on the docket by **August 16, 2018**.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
        August 9, 2018